IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SAMUEL H. MWABIRA-SIMERA        *
                                *
v.                              *
                                *    Civil Action No. WMN-11-2989
THOMPSON HOSPITALITY            *
SERVICES, LLP et al.            *
                                *
    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

### MEMORANDUM

Before the Court is a motion to dismiss, or in the alternative, for summary judgment, filed by Defendant Thompson Hospitality Services, LLP (Thompson).  ECF No. 10.  Upon review of the pleadings and the applicable case law, the Court determines that no hearing is necessary and that the motion must be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In the initial paragraphs of his 23 page Complaint, Plaintiff Samuel H. Mwabira-Simera describes himself as a "fifty year-old male, of African-Canadian national origin."  Compl. ¶ 2.  Elsewhere in the Complaint he refers simply to his "African national origin."  Id. ¶ 42.  Plaintiff also states that he "has a hearing impairment and difficulty walking and bending," id. ¶ 52, but provides no additional information regarding those disabilities.  Plaintiff adds that he was a victim of "state-

sponsored torture" and, as a result, suffers from "Post

Traumatic Stress Disorder (PTSD)."  Id. ¶ 50.

Plaintiff began working for Defendant Thompson on January

26, 2007, as a utility worker.  He alleges that, while working

for Defendant:

> Plaintiff was defamed[1] falsely accused of sexual
> harassment, reprimanded daily, and denied use of
> bathroom, regular breaks and eating that were given to
> similarly situated employees who are American-born,
> African-American, and/or persons of Latin American
> national origin.
>
> Agents, servants, and employees of Thompson made
> derogatory, insulting, and humiliating ethnic slurs
> and comments about Plaintiff, based on his African-
> Canadian, national origin, including, but not limited
> to, his physical characteristics, his "long African
> name," his "funny accent," and his "smelly like
> sanitation septic tank and African odor."  . . .
>
> Plaintiff was subjected to searches of his body
> [pockets] and properties [bags, jackets etc] on
> numerous occasions, including, but not limited to,
> February 28, 2007, June 29, 2007; August 2008, 2008
> [daily] Plaintiff's work area was illegally searched
> on January 10, 2008;[2] Thompson employees on January 11,
> 2008, falsely insinuated that Plaintiff Mwabira-Simera
> has stolen food.  None of the employees who are
> American-born was subjected to such indignities and
> discriminatory treatments.
>
> Discrimination against Plaintiff also involved
> assigning multiple and difficult tasks to him, working

---

[1] Plaintiff stated that he was "deformed."  The Court's best
guess is that he intended to indicate that he was defamed.

[2] Plaintiff specified that the illegal search took place on
"January 10, 2002," but as that was long before his employment
with Defendant, the Court assumes from the context that he meant
"January 10, 2008."

hours were cut, and . . . not paying him the number of
hours he worked.

Id. ¶¶ 16, 17.

On or about March 9, 2010, Plaintiff filed a charge of
discrimination with the Equal Employment Opportunity Commission
(EEOC) which he later amended on June 6, 2010.  Plaintiff
indicated via the checkboxes on his amended charge that he
believed that he was discriminated against on the basis of
"Race," "National Origin," "Retaliation," "Age," "Disability,"
and "Other," where he specified, "Equal Pay for Equal Work."  As
a factual predicate for his claims, Plaintiff cited "harassment,
stalking, name calling, threats of bodily harms and derogatory
slurs" and complained that management did nothing to stop the
"hostile work environment, harassment and derogatory name
calling."  ECF No. 10-3.  The EEOC dismissed Plaintiff's charge
on September 24, 2010, and issued him a right-to-sue letter.

Plaintiff filed suit in the Circuit Court for Baltimore
City on December 10, 2010, against Thompson and nine individuals
who are alleged to be agents or servants of Thompson.[3]  The

---

[3] While Plaintiff listed these individuals as Defendants in the
caption and introductory portion of the Complaint, in the
prayers for relief contained in each of the counts Plaintiff
only seeks "judgment against Defendant Thompson."  In addition,
it does not appear that Plaintiff has made any effort to serve
any of the individuals.  For these reasons, the Court assumes
that Plaintiff did not intend to name these individuals as
defendants in their individual capacities, but only as agents of

Complaint contains 14 counts, but several of the counts reference several different statutes or causes of action.  The causes of action include:

Count I[4] - unlawful discrimination based on national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Title VII);

Count II - retaliation under Title VII;

Count III - violation of the Rehabilitation Act of 1973, the "Fair Housing and Employment Act," the Family and Medical Leave Act (FMLA), and the Occupational Safety and Health Act (OSHA);[5]

Count IV - violation of the Genetic Information Nondiscrimination Act of 2008 (GINA);[6]

Count V - unlawful discrimination in violation of the Equal Pay Act of 1963 and Maryland's Equal Pay for Equal Work Act;

Count VI - a hostile environment claim under Title VII;

Count VII - violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 (ADA);

Count VIII - stalking in violation of Md. Code Ann., Crim. Law. §§ 3-801 and 3-802;

---

Defendant Thompson whose actions could create liability on the part of Defendant Thompson.

[4] Plaintiff has mis-numbered the counts, numbering them out of order and repeating the use of several numbers.  For purposes of this memorandum, the Court has simply renumbered the counts sequentially in the order they appear in the Complaint.

[5] This count also includes a claim of "cruel and unusual punishment."

[6] This count also cites various provisions of the National Labor Relations Act of 1935 (NLRA).

Count IX – bullying and harassment in violation of Md. Code Ann., Crim. Law § 3-804;

Count X – violations of privacy, trespass, the "Maryland Human Rights Act of 1977,"[7] "felony fraud," the "Privacy Act of 1974," 5 U.S.C § 552, and the Fourth Amendment of the United States Constitution;

Count XI – negligence;

Count XII – defamation;

Count XIII – malicious prosecution; and

Count XIV – intentional infliction of emotional distress.

After being served with the Complaint and Summons, Thompson removed the action to this Court invoking this Court's diversity jurisdiction.  After removing the case to this Court, Thompson filed the instant motion to dismiss, or in the alternative, for summary judgment.  Plaintiff filed a response to Thompson's motion,[8] but that response adds little clarity to the nature of Plaintiff's claims.[9]  Plaintiff's response invokes yet additional

---

[7] Thompson points out in its motion that there is no provision in the Maryland Code entitled the "Maryland Human Rights Act." Plaintiff does not direct the Court to any such provision in his response.

[8] Plaintiff captioned his response as a "Motion for Court to Deny Defendant's Motion to Dismiss" but the Court considers it simply an opposition to Defendant's motion.

[9] Plaintiff contends that "[i]f the court should hold that there are deficiencies in the Complaint, Plaintiff respectively (sic) contends that such deficiencies are addressed in Plaintiff's motion."  A plaintiff, however, cannot rely upon additional allegations included in a memorandum in opposition to a defendant's motion to amend his complaint.  See Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984) ("it

statutes and causes of action, including: violation of free speech, breach of contract, violation of the "Elliott-Larsen Civil Rights Act,"[10] disturbing the peace, disorderly conduct, deprivation of life without due process, the duty of fair representation on the part of labor unions, and negligent infliction of emotional distress.  ECF No. 13 at 2, 7, 8, 9, 12, and 22.  Plaintiff also mentions various legal doctrines or concepts that have no relevance, whatsoever, to his case: class actions, judicial estoppel, criminal indictments, personal jurisdiction, sovereign immunity under the Eleventh Amendment, admissibility of expert testimony under Daubert v. Merrell Dow Pharm., 509 U.S. 579 (1993), the "void for vagueness" doctrine, and the admissibility of evidence of other crimes under Rule 404(b) of the Federal Rules of Evidence.  Id. at 3, 7, 10, 15, 16, 17, 20, and 22.  It would appear that Plaintiff has simply pasted random paragraphs from various cases or sources into his response.  Thompson elected not to attempt to file a reply brief and Thompson's motion is now ripe for review.

## II. LEGAL STANDARD

---

is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss").  Regardless, Plaintiff's opposition adds nothing to the substance of his claims.

[10] This appears to be a Michigan civil rights statute, Mich. Comp. Laws § 37.2101 et seq.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is a test of the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. Bell Atlantic v. Twombly, 550 U.S. 544, 556–57 (2007). In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the Plaintiff. Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997). If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. Iqbal, 129 S.Ct. at 1950.

A plaintiff filing pro se is held to a "less stringent standard" than is a lawyer, and the court must construe his claims liberally, no matter how "inartfully" pled. Erickson v. Pardus, 551 U.S. 89, 94 (2007); accord Brown v. North Carolina Dept. of Corrections, 612 F.3d 720, 724 (4th Cir. 2010) (observing that liberal construction of a complaint is

particularly appropriate where a pro se plaintiff alleges civil rights violations).  However, even a pro se complaint must meet a minimum threshold of plausibility.  See, e.g., O'Neil v. Ponzi, 394 Fed. App'x. 795, 796 (2d Cir. 2010).

## III. DISCUSSION

Many of the causes of action brought by Plaintiff and the statutes allegedly violated have no application, whatsoever, in the context of this civil action.  Several of the purported causes of action rely on criminal statutes for which there is no private right of action.  See, e.g., Count VIII (alleging violation of Md. Code Ann., Crim. Law §§ 3-801 and 3-802) and Count IX (alleging violation of Md. Code Ann., Crim. Law § 3-804; see also Count X (alleging common law crime of "felony fraud").  Other counts, while they invoke civil statutes, also look to statutes for which there are no private rights of action.  See, e.g., Count III (alleging violations of OSHA) and Count IV (possibly alleging violation of the NLRA).  Another category of claims attempts to assert causes of action against Thompson that can only be asserted against government entities or against entities that exercise some form of governmental power.  See, e.g., Count III (asserting a violation of the Rehabilitation Act which can only be asserted against entities receiving federal financial assistance) and Count X (asserting claims for violations of the Privacy Act, which can only be

brought against federal agencies, and the Fourth Amendment's prohibition against unreasonable searches and seizures, which does not apply to private parties absent some governmental involvement).

Yet another category of causes of action asserted by Plaintiff relates to statutes that do allow private rights of action but have no relevance to the facts alleged in the Complaint.  Plaintiff includes claims under both the federal Equal Protection Act and the Maryland Equal Pay Act.  These provisions prohibit differing compensation on the basis of gender.  Plaintiff, however, makes no claim that women are paid more than he.  Plaintiff also includes a claim under GINA, but includes no allegation that Thompson asked for or obtained Plaintiff's genetic information or that Thompson used such information to discriminate against Plaintiff.

The next category of causes of action are those which are marginally related to the allegations in the Complaint but for which Plaintiff's allegations are plainly insufficient to meet the Rule 12 pleading standard.  Plaintiff brings a claim for intentional infliction of emotional distress.  While Maryland recognizes such a tort, it does so only in the most extreme situations where the conduct complained of "crossed the threshold of decency into a realm of atrocity and could only be regarded as utterly intolerable in a civilized society."

Kentucky Fried Chicken National Management Co. v. Weatherby, 607 A.2d 8, 12 (Md. 1992).  Maryland courts have found treatment considerably more severe than the treatment to which Plaintiff alleges he was subjected to fall short of that standard.  See Arabit v. Fred Meyers, Inc., 205 F. Supp. 2d 462, 466 (observing that "[a]s inappropriate and repulsive as workplace harassment is, such execrable behavior almost never rises to the level of outrageousness, and almost never results in such severely debilitating emotional trauma, as to reach the high threshold invariably applicable to a claim of intentional infliction of emotional distress under Maryland law").

Plaintiff asserts a defamation claim based on statements made by some of the individuals with whom he worked.  He alleges that they wrongfully accused him of "escaping from work" and sexually harassing two other co-workers.  Compl. ¶ 67.  To state a claim of defamation under Maryland law, a plaintiff must allege (1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm.  Norman v. Borison, 17 A.3d 697, 705 n.10 (Md. 2011).  A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person.  Id.

Plaintiff does not allege that his employer, Thompson, directly made any defamatory remarks to any third persons. Instead, he asserts that some of Thompson's employees made derogatory statements about him to other Thompson employees. While Maryland courts have concluded that an employer can be held vicariously liable for defamatory falsehoods made by its employees, see Embrey v. Holly, 442 A.2d 966. 972 (Md. 1982), to do so would not be appropriate under the facts alleged here. While liability can be based upon the agency status of the employees that made the alleged defamatory remarks, the defamatory statement would need to have been made to some third person who was not himself or herself an agent of the employer. Plaintiff has made no allegation that any defamatory statement has been made to such a third person.

Plaintiff's trespass claim arises out of allegations that Thompson's agents searched through his pockets, bags and workplace on several occasions.  This would appear to be a claim for trespass to chattels.  To state such a claim, a plaintiff must establish either some degree of damage to the chattels or harm to the owner's possessory interest in the chattels.  See Staub v. Staub, 376 A.2d 1129, 1133 (Md. App. 1977).  That latter harm requires that the owner be deprived of the use of the chattel for a substantial period of time.  Restatement (Second) of Torts § 218.  Plaintiff does not allege that any

harm was done to his property or that Thompson or its employees retained or exercised any control over any of his property.

In his "negligence" count, Plaintiff asserts that Thompson "owed a duty toward plaintiff to provide a working environment free from discrimination, intimidation, and harassment" and "to use reasonable care in hiring, retaining, supervising, and disciplining her (sic) workers . . . so as not to cause harm to plaintiff, including violation of their (sic) rights to be free from intimidation, bullying, stalking, searches and spying." Compl. ¶ 66.  The duty to provide a workplace free of discrimination, however, arises out of Title VII so that this "negligence" claim is simply duplicative of Plaintiff's Title VII hostile environment claim, discussed below.  As such, Plaintiff's negligence claim must be dismissed.  See Samuels v. Two Farms, Inc., Civ. No. 10-2480, 2012 WL 261196 (D. Md. Jan. 27, 2012) (holding that negligence counts that do no more than attempt to impose liability for alleged failure to conform to dictates of Title VII are preempted by Title VII and cannot proceed, citing Crosten v. Kamauf, 932 F. Supp. 676, 684 (D. Md. 1996)).

The last category of causes of action includes claims that do share a logical connection with some of the allegations in the Complaint but for which the allegations are insufficient to state a claim or for which it is not clear, because of the

manner in which the allegations in the Complaint are presented, whether the claims are barred on some procedural ground.  These include Plaintiff's ADA claim and his adverse employment action, hostile work environment, and retaliation claims under Title VII.

The Court turns first to Plaintiff's ADA claim.  Before bringing suit under the ADA, a litigant must have exhausted the administrative process at the EEOC.  That process starts with a charge of discrimination filed by the aggrieved worker.  The charge forms the basis for an investigation by the agency.  The agency's investigation, in turn, establishes the parameters for any subsequent employment discrimination suit by the employee. See Hubbard v. Rubbermaid, Inc., 436 F. Supp. 1184, 1188 (D. Md. 1977).  In Chisholm v. United States Postal Serv., 665 F.2d 482, 491 (4th Cir. 1981), the Fourth Circuit explained the relationship between the administrative case and civil suit: "An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination."  See also Evans v. Tech Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (explaining that the only claims that can be maintained in a Title VII lawsuit are those stated in the initial charge, reasonably related to

claims in the initial charge, or developed by reasonable investigation of the original complaint).

Here, while Plaintiff marked the box "Disability" along with several others,[11] nothing in his explanation of his charge relates to any claim of disability or even identified to the EEOC what his alleged disability might be.  His narrative is limited to complaints about derogatory slurs, name calling, and harassment "because of [his] national origin" and in retaliation for his participation in protected activities.  ECF No. 10-3. Nothing in the facts Plaintiff included in his charge would reasonably lead to the investigation of any claim of discrimination based on disability.  Accordingly, Plaintiff's ADA claim must be dismissed.  See Houston v. Army Fleet Servs., L.L.C., 509 F. Supp. 2d 1033, 1043 (M.D. Ala. 2007) (noting that "checking the correct box alone is not sufficient to satisfy the filing requirement when no factual particulars relating to the claim are disclosed to the EEOC"); see also, Chanda v. Engelhard/ICC, 234 F.3d 1219, 1225 (11th Cir. 2000) (affirming summary judgment granted to employer on retaliation claim because nothing in employee's EEOC filing mentions facts relating to retaliation claim based on complaints of national

---

[11] Plaintiff also marked the box "Age" although he apparently did not intend to assert a claim of age discrimination.

origin discrimination even though employee checked the retaliation box on the form).

Plaintiff brings three different kinds of claims under Title VII: adverse employment action or disparate treatment (Count I),[12] retaliation (Count II), and hostile environment (Count III).  To prove a claim for disparate treatment in the national origin context, a plaintiff must establish that: (1) he is a member of a class protected under Title VII, (2) he has satisfactory job performance, (3) he was subjected to adverse employment actions, and (4) similarly situated employees outside that class received more favorable treatment.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).  Plaintiff's disparate treatment claim arises out of his allegations that his work hours were cut, he was not paid for all the hours he worked, he was denied bathroom and meal breaks, and was assigned "multiple and difficult tasks" where those who were not born in Africa were not subjected to those practices.  Compl. ¶ 17.

Assuming, without deciding, that these allegations rise to the level of adverse employment actions, the Court finds that, just as Plaintiff failed to exhaust his administrative remedies as to his ADA claims, he failed to exhaust them as to his

---

[12] As Thompson observes, Count I includes allegations related to both a disparate treatment and a hostile environment claim. Because Plaintiff brings a separate claim under a hostile environment theory in Count VI, the Court will limit its discussion of Count I to Plaintiff's disparate treatment claim.

disparate treatment claim as well.  Judge Frederick Motz of this Court very recently faced a similar procedural situation in Frazier v. Dept. of Juvenile Servs., Civ. No. 10-843, 2011 WL 5592890 (D. Md. Nov. 15, 2011).  In his complaint filed in the district court, Frazier alleged that he was "singled out" because of his race and subjected to racially motivated remarks and insults from his co-workers and also alleged that he was subjected to several discrete acts of disparate treatment.  Like Plaintiff here, Frazier had previously filed an administrative charge "alleging only that he was subjected to a 'hostile work environment, racial harassment and intimidation.'"  Id. at *6. In concluding that Frazier had failed to exhaust his administrative remedies as to his disparate treatment claims, Judge Motz noted:

> [t]he original EEOC charge contains no allegations of
> discrete acts of disparate treatment, and Plaintiff's
> specific allegations of discrimination in disciplinary
> and promotion decisions are entirely and conspicuously
> absent.  Instead, the charge speaks only of a hostile
> work environment, a claim that is "different in kind
> from discrete acts."  Nat'l R.R. Passenger Corp. v.
> Morgan, 536 U.S. 101, 115 [] (2002); see also Martin
> v. Merck & Co., Inc., 446 F. Supp. 2d 615 (W.D. Va.
> 2006) (holding that although an EEOC charge alleged a
> racially hostile work environment, plaintiff had not
> exhausted remedies as to discrete acts of disparate
> treatment).

Id.

Were the Court to find that Plaintiff's administrative charge was somehow broad enough to encompass his disparate

treatment claim, that claim would be time-barred, nonetheless.
In Maryland, a claimant must file his administrative charge
within 300 days of the date that the unlawful employment
practice occurred.  See 42 U.S.C. § 2000e-5(e)(1).  Because
Plaintiff filed his charge with the EEOC on March 9, 2010, any
claim based on a practice that predated May 13, 2009, would be
barred.  Although the dates provided in the Complaint are
somewhat confusing and incomplete, see supra at 2 and n.2,
Plaintiff, after listing the employment actions that he believes
were discriminatory, states that he complained to his manager
"about these discriminatory practices . . . on or about June 2,
2008 and January of 2009."  Compl. ¶ 17.  Thus, those alleged
discriminatory actions all must have taken place well before May
13, 2009.

        Turning to Plaintiff's hostile environment claim, the Court
finds that the Complaint contains insufficient allegations to
support such a claim.  Title VII makes it unlawful for an
employer "to discriminate against any individual with respect to
his compensation, terms, conditions, or privileges of
employment, because of such individual's race [or] ... sex."  42
U.S.C. § 2000e-2(a)(1).  "Since an employee's work environment
is a term or condition of employment, Title VII creates a
hostile working environment cause of action."  EEOC v. R & R
Ventures, 244 F.3d 334, 338 (4th Cir. 2001).  To establish a

claim for a hostile work environment in the national origin context, a plaintiff must prove that the harassment to which he was subjected was: (1) unwelcome, (2) based on his national origin, (3) sufficiently severe or pervasive to alter the conditions of his employment and create an abusive atmosphere, and (4) imputable to his employer.  See EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 313-14 (4th Cir. 2008).  The Complaint sufficiently supports the first, second, and fourth elements.

As to the third element, this Court has held that the severe or pervasive standard is intended to be a "very high" standard because it is "designed to 'filter out complaints attacking the ordinary tribulations of the workplace.'"  Wang v. Metro. Life Ins. Co., 334 F. Supp. 2d 853, 864 (D. Md. 2004) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)).  In order to establish a hostile work environment claim, the conduct at issue must be far more severe than that of "a merely unpleasant working environment," Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996), and must be sufficiently "pervasive [so] as to become diffuse throughout every part of the . . . work environment in which plaintiff functioned."  Schweitzer-Reschke v. Avnet, Inc., 874 F. Supp. 1187, 1195 (D. Kan. 1995).  As such, courts usually only allow hostile work environment claims to proceed where the discriminatory abuse is near constant, oftentimes of a violent

or threatening nature, or has impacted the employee's work performance.  Tawwaab v. Virginia Linen Serv., Inc., 729 F. Supp. 2d 757, 777 (D. Md. 2010).  In contrast, simple teasing, sporadic use of abusive language, offhand comments, jokes related to protected status, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.  Faragher, 524 U.S. at 788.  Likewise, general complaints of rude treatment are not sufficient to sustain a hostile work environment claim.  See, e.g., Baqir v. Principi, 434 F.3d 733, 747 (4th Cir. 2006).

Because of the somewhat confusing manner in which the Complaint was drafted, it is not clear whether the harassment to which Plaintiff was subjected was sufficiently severe or pervasive.  Plaintiff mentions comments about his "African physical characteristics," "long name," and that his coworkers "made fun of Plaintiff" and "tease[d]" him, Compl. ¶ 42, but it is unclear how frequently that teasing took place, and what was the degree of offensiveness of that teasing.  Plaintiff does allege at one point in his Complaint that three of his co-workers "made several bodily threats raging (sic) from shooting and beating," id., but, given that Plaintiff also seems to state that he was "deprived of life without due process," ECF No. 13 at 9, the Court is left to wonder how literally it is to take that language.  Also, there is no clear indication as to the

time frame in which this conduct took place, i.e., if the
conduct fell within the 300 day window for filing an EEOC charge
or, alternatively, if it was part of an ongoing pattern of
discrimination so as to constitute a "continuing violation."
See Derrickson v. Circuit City Stores, Inc., 84 F. Supp. 2d 679
(D. Md. 2000).

Thus, the Court will grant the motion to dismiss as to this
claim, but without prejudice to Plaintiff amending his complaint
to clarify his hostile work environment allegations.  If
Plaintiff chooses to amend his Complaint, he is encouraged to
provide a plain statement as to the time frame, frequency, and
severity of the conduct.  He is also strongly advised not to
insert irrelevant material regarding unrelated causes of action
or legal theories.  Furthermore, Plaintiff should refrain from
citing case law or commentaries as it renders it difficult to
discern between his own actual allegations and language he has
simply borrowed from other sources.  A short and plain statement
of the facts supporting this claim is all that is required.
Fed. R. Civ. P. 8.

Finally, the Court turns to Plaintiff's retaliation claim
under Title VII.  Plaintiff appears to be alleging that after
filing his EEOC charge in 2010 he was subjected to various acts

of retaliation.  Compl. ¶ 27.[13]  Thompson moves to dismiss this
claim on the ground that Plaintiff has failed to exhaust his
administrative remedies as to this retaliation claim.

    Thompson acknowledges that, typically, a plaintiff does not
need to file a separate retaliation charge in order to sue for
retaliation based on the filing of the original charge.  Courts
reason that a claim of retaliation for filing an EEOC charge is
"like or reasonably related to and growing out of" the
allegations in the original charge.  Jones v. Calvert Group,
Ltd., 551 F.3d 297, 302 (4th Cir. 2009).  Furthermore, courts
have recognized that an employee should not be forced to renew a
process for which he is alleging he was already retaliated for
initiating and which could bring about further retaliation.  Id.

    While Plaintiff need not have initiated a new charge, he
voluntarily did so, filing a second charge with the EEOC on July
26, 2011.  At the time that Thompson filed its motion to
dismiss, the administrative process initiated by the filing of
that second charge was ongoing.  Thompson contends that, where
an employee has voluntarily chosen to give the EEOC jurisdiction
to mediate, investigate and conciliate a discrimination claim,
it would be inappropriate for this Court to simultaneously
permit that same employee to pursue the same claims in court

---

[13] The count asserting retaliation, however, also includes
allegations about conduct that took place in 2007, 2008 and
2009.  Id. ¶¶ 26, 27, 28.

litigation before allowing the EEOC to exhaust its administrative procedures.

The Court agrees and will dismiss Plaintiff's retaliation claim.  This dismissal is also without prejudice.  The Court assumes that it is likely that, by this time, Plaintiff has received a right to sue letter regarding his second charge and, should he choose to file an amended complaint, he can indicate that he has now exhausted his administrative remedies as to that claim as well.

## IV. CONCLUSION

For the above stated reasons, Thompson's motion to dismiss will be granted.  That dismissal is without prejudice as to the dismissal of Plaintiff's hostile work environment claim and retaliation claim under Title VII.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: March 20, 2012.